William D. ARNOLD et al., Plaintiffs-Appellants,

v.

Bert R. TIFFANY et al., Defendants-Appellees,

No. 73-1404.

United States Court of Appeals,
Ninth Circuit.

Oct. 25, 1973.

Certiorari Denied March 18, 1974.
See 94 S.Ct. 1578.

Timothy H. Fine (argued), Richard A. Canatela (appeared), San Francisco, Cal., Wallace L. Rosvall (appeared), Thomas R. Sheridan, of Simon, Sheridan, Murphy, Thornton & Hinerfeld, Los Angeles, Cal., G. Joseph Bertain, Jr., San Francisco, Cal., for plaintiffs-appellants.

John J. Hanson (argued), Donald L. Zachary, of Gibson, Dunn & Crutcher, Robert C. Lobdell, William A. Niese, of The Times-Mirror Co., Los Angeles, Cal., Wes Spaulding, San Gabriel, Cal., for defendants-appellees.

Before TUTTLE,* MERRILL and BROWNING, Circuit Judges.

TUTTLE, Circuit Judge:

Appellants, seventeen independent news dealers who distribute the Los Angeles Times under individual contracts with the Times Mirror Company, appeal the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) of their claims under 42 U.S.C. § 1981, § 1982, and § 1985(3).

### FACTS

The plaintiffs seek injunctive relief and damages for violations of the Civil Rights Act, Sections 1981, 1982 and 1985(3). The plaintiffs allege that the defendants, who are various officers and employees of the publisher of The Los Angeles Times and one other independent newspaper dealer, "have conspired with invidiously discriminatory animus to deprive on a class-wise basis the Los Angeles Times newspaper dealers including plaintiffs of the equal protection of the laws through intimidating, harassing, causing economic injury and coercing said dealers from exercising their rights under the first and fourteenth amendments to the United States Constitution to peaceably assemble." Such conspiratorial conduct is alleged to have been taken to prevent plaintiffs from forming and maintaining a newspaper dealers' trade association.

On February 26, 1973, the district court heard oral argument on plaintiffs' motion for preliminary injunction. At an informal conference the next day in which the matter was continued, the

* Of the Fifth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

counsel for defendants stated their intent to file a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted in order to test the legal sufficiency of the complaint. Since plaintiffs' counsel acknowledged that the case law showed that Sections 1981 and 1982 are limited to instances of racial discrimination, sufficiency of the cause of action under Section 1985(3) was deemed decisive. The district court and counsel agreed that the motion should focus on the crucial question of the applicability of Section 1985(3).

For the purpose of ruling on the motion pursuant to Fed.R.Civ.P. 12(b)(6) the district court considered as admitted "the well-pleaded material allegations of the complaint." Having considered the pleadings and briefs and heard the arguments of counsel, the district court, 359 F.Supp. 1034, concluded that plaintiffs' complaint failed to state a claim for relief under Sections 1981, 1982, and 1985(3).

### LAW

The issue on appeal is whether the district court erred in dismissing plaintiffs' complaint on the ground that the actions of the publisher of the Los Angeles Times and others in conspiring to prevent through economic reprisals the independent newspaper dealers for the Los Angeles Times from forming and maintaining an association of independent newspaper dealers did not state a cause of action under 42 U.S.C. § 1985(3) as expounded in Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

The district court in its opinion correctly noted that Griffin is controlling in this case. That court, after discussing the Griffin holding stated:

"  .   .   .   Plaintiffs do not claim that defendants were motivated by racial animus. The critical question which this Court must then decide is what other 'kind of invidiously discriminatory motivation'—in addition to racial bias—did the Court have in mind when it used the words 'class-based, invidiously discriminatory animus.'

"A close reading of Griffin leads this Court to conclude that the words 'class-based, invidiously discriminatory animus' refer, at most, to that kind of irrational and odious class discrimination akin to racial bias—such as discrimination based on national origin or religion. The complaint alleges no such discrimination.

"Furthermore, for this Court to conclude that § 1985(3) was intended to embrace the class urged here—a newspaper dealers' trade association —would, in effect, amount to treating that section as a general federal tort law."

We affirm on other grounds discussed below.

The claims which appellants' complaint must establish to state a cause of action under Section 1985(3) were enumerated by Griffin:

"To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or cause to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" 403 U.S. at 102–103, 91 S.Ct. at 1798.

The allegations in the complaint, on their face, fulfill the requirements of elements (1) and (3). In this case, element (2), whose absence caused the district court to grant the motion under Fed.R.Civ.P. 12(b)(6), and element (4b) present substantial questions left unanswered by Griffin.

The Court in *Griffin* interpreted the language of the element (2) requirement, *"purpose*[1] (emphasis added) of depriving . . . of the *equal* protection of the laws, or of *equal* privileges and immunities under the laws," as indicating a Congressional intent to limit the scope of Section 1985(3). The Court said:

" . . . That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. . . . The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."[10] 403 U.S. at 101–102, 91 S.Ct. at 1798.

And in footnote 10 the Court explained:

" . . . The motivation aspect of § 1985(3) focuses not on scienter in relation to deprivation of rights but on invidiously discriminatory animus." *Id.*

We do not believe that the allegations by appellants suffice under the purpose requirement of element (2)—"class-based, invidiously discriminatory ani-

mus"—to be actionable under Section 1985(3) as discussed in *Griffin*. The class, in the present case, is composed of over four hundred newspaper dealers of the Los Angeles Times, each of whom has an independent contract with the Los Angeles Times. The appellants are seventeen of these dealers who allege that the appellees conspired to violate their right of association in forming and maintaining a newspaper dealers' association. The flaw appears in the appellant's syllogism when the "animus" alleged herein is compared to that in *Griffin*. There the motivating hostility was derived from the fact that the plaintiffs were black, members of a racial class against which animus existed, and that the defendants believed them to be civil rights organizers. But here, the appellants were not injured because they were newspaper dealers, the class alleged, but because of their activities in attempting to maintain a dealer association. The animus is directed at and derived from the dealer association and is divorced from the fact that there is a class of newspaper dealers.[2]

The deficiency in the appellant's complaint is similar to that in Hughes v. Ranger Fuel Corp., 467 F.2d 6, 8–10 (4th Cir. 1972). The plaintiffs there alleged that while engaging in efforts to "turn in" violators of the 1899 Refuse Act, the defendants "pelted them with rocks and otherwise assaulted them, driving them from the scene of the pollution for the purpose of preventing them from securing photographic evidence" for a prospective cause of action in the federal court. The court stated:

"In their complaint, the plaintiffs make no allegations of any class-based motivation on the part of the defendants. . . . There is no averment

---

1. The Court in Griffin, in effect, "held that a purpose to deprive a person of equal rights will be inferred from the racial [or other class-based] motivation of the conspiracy." The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 98 n. 21 (1971). Cf. Griffin v. Breckenridge, 403 U.S. at 102 n. 10, 91

S.Ct. 1790; Azar v. Conley, 456 F.2d 1382, 1385–1386 (6th Cir. 1972).

2. Having found the allegations in the complaint inadequate on the above ground, we find it unnecessary to reach the "class" question on which the district court based its decision.

in the complaint that the defendants attacked the plaintiffs because the latter were environmentalists, as had been suggested in this Court; the allegations of the complaint are specific that the assault was sparked solely by the instant reaction of the defendants to the fact that the plaintiffs were seeking to photograph the defendants, clearly for the purpose of prosecuting them under the Refuse Act. Theirs was a purely spontaneous act, not alleged to be a part of any general pattern of discriminatory action directed to any class, as was the situation in Action v. Gannon (8th Cir. 1971) 450 F.2d 1227." *Id.* at 10.

The element (4b) necessary for a cause of action under *Griffin* requires the appellants to be "deprived of having and exercising any right or privilege of a citizen of the United States." 403 U. S. at 103, 91 S.Ct. at 1799. The appellants assert a deprivation of their first amendment right of association. Since the first amendment has not been held to be a restraint on *private* conduct, only on state action, the appellants suggest two novel arguments for sustaining their right. First, the appellants would argue that the elimination of the state action requirement by *Griffin* extends the right of association under the first amendment as a bar against private interference as well as state action in Section 1985(3) suits.[3] Second, appellants assert that the right of association is one of that bundle of rights held by all persons who are *national citizens*.[4] Since we have affirmed the district court's de-

cision on the class-based animus limitation, it is unnecessary for us to reach these issues or the question of the constitutional power of Congress to enact such a statute.[5]

The judgment of the trial court is affirmed.

---

3. This can be accomplished by reading Section 1985(3) as a substantive law embodying constitutional rights without the state action requirement rather than just a remedial statute. Action v. Gannon, 450 F.2d 1227 (8th Cir. 1971) (*en banc*); Commonwealth of Pennsylvania v. Local Union #542, Int. U. of Op. Eng., 347 F.Supp. 268 (E.D.Penn. 1972). *See* Griffin v. Breckenridge, 403 U. S. 88, 90, 103, 91 S.Ct. 1790, 29 L.Ed.2d 38 (1971); The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 99–100 (1971). *Contra*, Dombrowski v. Dowling, 459 F.2d 190, 193–196 (7th Cir. 1972). *Cf.* Place v. Shepherd, 446 F.2d 1239, 1246 (6th Cir. 1971).

4. To support the derivation of such a *national* personal right, the appellants cite Griffin v. Breckenridge, 403 U.S. at 104, 105, 106, 91 S.Ct. 1790; Griswold v. Connecticut, 381 U.S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); N.A.A.C.P. v. Alabama, 357 U.S. 449, 460–461, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); De Jonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278 (1937).

5. *See* U.S.Const. Amend. XIV, § 5; Commonwealth of Pennsylvania v. Local Union #542, Int. U. of Op. Eng., *supra*. *Cf.* United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).