Kenneth S. USTON, Plaintiff,

v.

HILTON HOTELS CORPORATION, Hilton Casinos, Inc., Albert L. Kearns, John Atkinson and John Bowman, Defendants.

Civ. No. LV 76–108 RDF.

United States District Court,
D. Nevada.

March 21, 1978.

Oscar B. Goodman, Las Vegas, Nev., for plaintiff.

Lionel, Sawyer & Collins, Las Vegas, Nev., for defendants.

## MEMORANDUM OPINION

ROGER D. FOLEY, Chief Judge.

This action is one of several cases filed by Kenneth Uston in this court and others over the last two years. In all, Uston has sought damages as well as injunctive relief to enjoin the respective casinos from refusing to allow him to play the game of "21". The present action arises from an event which occurred at the Flamingo Hilton Hotel casino on June 29, 1975. At approximately 6:00 P.M., Uston was approached by two security guards at a "21" table and was requested to leave the premises. The two guards escorted Uston to the hotel's entrance where Uston was read the Nevada trespass statute. Uston thereafter departed. Uston alleges that he was asked to leave because he is a "better than average black jack ("21") player."[1]

This case is presently before this Court on the defendants' motion for summary judgment. For the reasons set forth below, it is the conclusion of this Court that summary judgment be granted in favor of the defendants.

Uston's complaint contains various causes of action which may be divided into the state law claims and the federal law claims. The claims based on federal law will be discussed first.

This action is brought under various provisions of Title 28, United States Code, most notably §§ 1332 and 1343(3), and under the provisions of Title 42, United States Code, §§ 1983, 1985 and 1986. Uston asserts that certain rights secured by the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution have been denied him. After having considered the pleadings, affidavits and written arguments of counsel, it is the finding of this Court that there are no pertinent genuine issues of fact. Further, it is the finding of this Court that Uston has failed to state any federally recognized cause of action.

■ In order to predicate an action under 42 U.S.C. § 1983, it must be demonstrated, inter alia, that the deprivation of constitutional rights, the injury complained of, was brought about by state action, that is, took place under color of state law. It is well established that private conduct without some significant state involvement is not actionable under 42 U.S.C. § 1983. In opposing the defendants' motion for summary judgment, Uston asserts that the actions of the defendants in preventing him from playing the game of "21" were tantamount to state action (1) because of the extent to which the State of Nevada regulates the gaming industry, and (2) because the State of Nevada, charged with the enforcement of the gaming laws, has refused to prohibit the discrimination against card counters. Both contentions are without merit.

■ Mere state regulation of a private industry in and of itself does not constitute state action. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Something more, more in the nature of a substantial and direct state involvement in promoting the challenged activity, must be demonstrated in order to establish state action. In *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), a private electric utility was subject to pervasive and detailed state regulation and licensing, similar to the extent that the gaming industry is controlled by Nevada. The Court, in holding that such licensing and regulation did not constitute state action, stated, at page 358, 95 S.Ct. at page 457:

"Metropolitan is a privately owned corporation, and it does not lease its facili-

---

1. Uston, apparently, is a "card counter." With respect to the game of "21", a card counter is a person that attempts to know every card both in and out of the deck, thereby enhancing his chances of placing a favorable wager. This practice is not considered cheating, nor is it illegal.

ties from the State of Pennsylvania. It alone is responsible for the provision of power to its customers. In common with all corporations of the State it pays taxes to the State, and it is subject to a form of extensive regulation by the State in a way that most other business enterprises are not. But this was likewise true of the appellant club in *Moose Lodge No. 107 v. Irvis*, supra, where we said:

'However detailed this type of regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination. Nor can it be said to make the State in any realistic sense a partner or even a joint venturer in the club's enterprise.' 407 U.S. at 176–177, [92 S.Ct. 1965.]

"All of petitioner's arguments taken together show no more than that Metropolitan was a heavily regulated, privately owned utility, enjoying at least a partial monopoly in the providing of electrical service within its territory, and that it elected to terminate a service to petitioner in a manner which the Pennsylvania Public Utility Commission found permissible under state law. Under our decision this is not sufficient to connect the State of Pennsylvania with the respondent's action so as to make the latter's conduct attributable to the State for purposes of the Fourteenth Amendment."

In the case at hand, there has been no demonstration that the State of Nevada, either through its regulation and/or licensing of the gaming industry, has to any significant degree promoted or participated in the exclusion of persons suspected by gaming establishments to be card counters or in Uston's words, "better than average black jack players."

Similarly, the State of Nevada is under no obligation, statutory or otherwise, which, by its refusal to compel gaming establishments to allow card counters to play "21", would attribute the defendants' actions to state action. Uston has asserted that the omission by the State of Nevada to take any affirmative action to alleviate the discrimination against card counters, in light of Nevada Revised Statutes 463.151, is akin to approval of same, and therefore state action. NRS 463.151 requires the exclusion from gaming establishments of certain persons named on a list compiled by the Nevada Gaming Commission for various reasons, one of which is not card counting.[2] In essence, Uston argues that since the State of Nevada has enacted measures that require the exclusion of a limited class of undesirable persons, of which Uston is not a member, it thereby undertook the affirmative duty to compel the admittance of all persons, such as Uston, who were not named on the list compiled by the Nevada Gaming Commission. Such an argument strains logic. It is the judgment of this Court that NRS 463.151 gives rise to no affirmative obligation by the State of Nevada to compel gaming establishments to admit persons thought to be card counters. Since no duty exists, the failure to prohibit private action is not state action. As was stated in *Cohen v. Illinois Institute of Technology*, 524 F.2d 818 (7th Cir. 1975), at 826:

"Finally, we are not persuaded that the omission of any affirmative prohibition

2. "463.151 *Regulations requiring exclusion, ejection of certain persons from licensed gaming establishments: Persons included; duty of licensed establishments.*
"1. The commission may by regulation provide for the establishment of a list of persons who are to be excluded or ejected from any licensed gaming establishment. This list may include any person:
    (a) Who is of notorious or unsavory reputation;
    (b) Who has been convicted of a crime which is a felony in the State of Nevada or under the laws of the United States or a crime involving moral turpitude; or
    (c) Whose presence in a licensed gaming establishment would, in the opinion of the board or commission, be inimical to the interests of the State of Nevada, or of licensed gambling, or both.
"2. Race, color, creed, national origin or ancestry, or sex shall not be grounds for placing the name of a person upon such list.
"3. Any list compiled by the board or commission of persons to be excluded or ejected shall not be deemed an all-inclusive list, and licensed gaming establishments have a duty to keep from their premises persons known to them to be inimical to the interests of the State of Nevada, or of licensed gambling, or both."

against sex discrimination, even against the background of detailed State regulation of the Institute, is tantamount to express State approval of the objectionable policy. The holding of the Supreme Court in *Moose Lodge No. 107 v. Irvis,* supra, requires us to reject such an argument. For it is abundantly clear that the State of Pennsylvania had ample power to revoke the liquor license of the Lodge No. 107, and further that the State could not constitutionally endorse the Lodge's discriminatory practices. If a State's mere failure to prohibit could be equated with express approval, the *Moose Lodge* case would have been decided differently."

As such, since Uston has been unable to persuade this Court that any of the activities involved in his removal from the casino of the Flamingo Hilton amounted to state action, this Court concludes that Uston has failed to state a claim under 42 U.S.C. § 1983.

■ Next, Uston asserts that the defendants have conspired to deprive him of the opportunity to play "21" which is actionable under 42 U.S.C. § 1985. In order to state a claim under 42 U.S.C. § 1985(3), it must be asserted that the defendants conspired to deprive Uston of equal protection of the laws, hence causing injury to him or his property. However, in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), at 101 and 102, 91 S.Ct. at 1798, the Court stated that 42 U.S.C. § 1985 was not "intended to apply to all tortious, conspiratorial interferences with the rights of others," but only to those which were founded upon "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." See also *Briley v. California,* 564 F.2d 849 (9th Cir. 1977); *Arnold v. Tiffany,* 359 F.Supp. 1034 (C.D.Cal.1973), aff'd on other grounds 487 F.2d 216 (9th Cir. 1974), cert. denied 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); *Western Telecasters v. Calif. Fed. of Labor,* 415 F.Supp. 30 (S.D.Cal.1976).

■ In the case at hand, Uston has failed to allege that the "conspiracy" between the defendants to eliminate the class of "better than average black jack players" was brought about by racial or any other invidiously discriminatory animus. Therefore, Uston has failed to state a claim under 42 U.S.C. § 1985.

■ Following, Uston has alleged a claim under 42 U.S.C. § 1986. 42 U.S.C. § 1986 provides a cause of action against those who neglect to prevent conspiracies under 42 U.S.C. § 1985. Failure to establish any right to relief under 42 U.S.C. § 1985, however, justifies dismissal of an action based on 42 U.S.C. § 1986. See *Shaw v. Garrison,* 391 F.Supp. 1353 (E.D.La.1975); *Hahn v. Sargent,* 388 F.Supp. 445 (Mass. 1975). As previously mentioned, it is the judgment of this Court that Uston has stated no claim under 42 U.S.C. § 1985. As such, Uston's claim based on 42 U.S.C. § 1986 shall be dismissed.

Turning now to Uston's state law claims, it is the finding of this Court that it is without jurisdiction to entertain same. Based on the same series of events upon which Uston predicated his federal law claims, he alleges state law claims of assault, false imprisonment, intentional infliction of emotional harm, and violation of the state public accommodation law. Since all the federal law claims have been dismissed, the only jurisdictional base upon which this Court could entertain the state law claims is Uston's assertion that this Court has diversity jurisdiction under 28 U.S.C. § 1332.

■ Diversity jurisdiction exists only if there is complete diversity. *Strawbridge v. Curtis,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). Uston alleges that he is a citizen of California, and for complete diversity to exist none of the defendants can be citizens of California. One of the named defendants, Hilton Hotels Corporation, has as its principal place of business the State of California. 28 U.S.C. § 1332(c) provides:

"For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: . . . ."

For purposes of 28 U.S.C. § 1332, Hilton Hotels Corporation is a citizen of the State of California. As such, there is no diversity jurisdiction. Therefore, Uston's state law claims shall be dismissed.